FILED
at ___ O'clock & ___ min. ___ M
SEP 16 2011
United States Bankruptcy Court
Columbia, South Carolina (6)

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Cynthia Carrsow-Franklin,<br><br>                              Debtors. | Misc. Pro. No. 11-90007-JW<br><br>Case No. 10-20010-rdd<br><br>Pending in the<br>United States Bankruptcy Court<br>Southern District of New York |
| Herman John Kennerty,<br><br>                              Movant,<br><br>v.<br><br>Cynthia Carrsow-Franklin,<br><br>                Party Issuing Subpoena. | Chapter 13<br><br><br>**ORDER** |

This matter comes before the Court on the Motion for Protective Order ("Motion") filed by Herman John Kennerty ("Kennerty"). A hearing on the Motion was conducted on September 9, 2011. Cynthia Carrsow-Franklin ("Debtor") seeks to take the deposition of Kennerty, a former Wells Fargo employee, to discover information relevant to the prosecution of her Objection to a proof of claim filed by Wells Fargo in her bankruptcy case, which is presently pending in the United States Bankruptcy Court for the Southern District of New York. On June 21, 2011, Debtor's counsel issued a subpoena to Kennerty from the United States Bankruptcy Court for the District of South Carolina.[1] In response to the subpoena, Kennerty filed the Motion with this Court, seeking a protective order pursuant to Federal Rule of Civil Procedure 26(c), which is made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7026.

---

[1] Kennerty is apparently a resident of York, South Carolina.

ENTERED
SEP 16 2011
J.G.S.

Kennerty asserts that Debtor's counsel plans to publicly disclose his deposition transcript, refuses to limit its use to this litigation only, and seeks testimony beyond the scope of the claims in this case. Accordingly, in order to protect Kennerty from annoyance, embarrassment, oppression, and undue burden, Kennerty requests that the Court enter an order pursuant to Fed. R. Civ. P. 26(c) that (1) prohibits the public disclosure of Kennerty's deposition transcript; (2) limits the use of Kennerty's deposition transcript to this litigation only; and (3) limits the scope of Kennerty's deposition testimony to the issues relevant to the claims in this case.

### I.  Request for Protective Order Regarding Disclosure & Use of Kennerty's Deposition

Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.... The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking the protective order bears the burden of demonstrating good cause. Felling v. Knight, 211 F.R.D. 552, 664 (S.D. Ind. 2003) (citing Sentry Ins. v. Shivers, 164 F.R.D. 255, 256 (D. Kan. 1996)). "To establish good cause, a party must submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Id. (citing Wilson v. Olathe Bank, 184 F.R.D. 395, 397 (D. Kan. 1999), quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n. 16 (1981)).

Kennerty asserts that good cause exists to issue a protective order due to the risk of embarrassing or derogatory comments about him being published on the Internet or in national publications if the deposition transcript or his testimony is made publicly

available. While Kennerty did not appear or testify at the hearing, as evidence of this risk, Kennerty's counsel presented four documents showing the types of comments previously published about him or people holding similar job positions as a result of deposition testimony from other mortgage claim litigation being made publicly available. The documents include (1) a blog posting from September 16, 2010 on www.merchantcircle.com, (2) a blog posting from November 17, 2010 on www.merchantcircle.com, (3) an article entitled, "Mortgage Mess Redux: Robo-signers Return," from the July 2011 issue of Reuters magazine, and (4) an article entitled, "Invasion of the Home Snatchers," from the November 25, 2010 issue of Rolling Stone magazine. Debtor objected to the introduction of each of these documents into evidence on authentication and hearsay grounds. Therefore, as a preliminary matter, the Court will address the admissibility of each of these documents.[2]

Under Federal Rule of Evidence 901, authentication of evidence is a condition precedent to admissibility. F.R.E. 901(a). "A party seeking to admit an exhibit need only make a prima facie showing that it is what he or she claims it to be. This is not a particularly high barrier to overcome." Firehouse Restaurant Group, Inc. v. Scurmont LLC, C/A No. 4:09-cv-00618, 2011 WL 3555704, at *4 (D.S.C. Aug. 11, 2011) (quoting Lorraine v. Market Am. Ins. Co, 241 F.R.D. 534, 542 (D. Md. 2007)). Under Rule 901, the court must determine whether the proponent of the evidence has offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is. Firehouse, 2011 WL 3555704, at *4. Evidence may be authenticated in a number of ways, including through the presentation of testimony of a witness with knowledge of the

---

[2] Although Debtor appeared to admit in her objection that Kennerty's prior deposition was released publicly and that it may have caused him embarrassment and concern, Debtor or Debtor's counsel denied being responsible for the release.

evidence. See F.R.E. 901(b)(1) – (10) (setting forth a non-exclusive list of examples of authentication methods).

*1. September 16, 2010 Blog Posting*

Kennerty first seeks to admit the September 16, 2010 blog posting, which is an Internet printout of a comment posted on www.merchantcircle.com. The printout includes the date the printout was printed and the web address where the material was accessed. Printouts from commercial Internet websites are not self-authenticating. St. Luke's Cataract and Laser Institute, P.A. v. Sanderson, No. 8:06-cv-223-T-MSS, 2006 WL 1320242, at *2 (M. D. Fla. May 12, 2006) (citing Sun Protection Factory, Inc. v. Tender Corp., 2005 WL 2484710, slip op. at 6, n. 4 (M.D.Fla. Oct. 7, 2005)). Several courts considering the authentication of Internet printouts have held that a witness declaration in combination with a document's circumstantial indicia of authenticity (i.e., the date and web address that appear on them) would support a reasonable juror in the belief that the documents are what the declarant says they are. See Firehouse, 2011 WL 3555704, at *4, Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F.Supp.2d 1146 (C.D. Cal. 2002); United States v. Standring, No. 1:04CV730, 2006 WL 689116 (S.D. Ohio 2006); St. Luke's, 2006 WL 1320242, at *2 (requiring some statement or affidavit from someone with knowledge of the website; for example, a webmaster or someone else with personal knowledge). Kennerty presented no witness testimony or affidavits to authenticate the September 16, 2010 blog posting, and therefore has not met the requirements for authentication under F.R.E. 901.[3] Since the Court concludes that the

---

[3] The Court initially orally indicated it would admit this document into evidence on the grounds that Debtor appeared to concede in her pleadings that embarrassing or derogatory materials from an earlier similar deposition of Kennerty had been disseminated on the Internet. However, following additional objections being raised to similar documents on similar grounds, the Court reconsidered its ruling.

4

September 16, 2010 blog posting is not admissible on authentication grounds, it is unnecessary to decide at this time whether the document should be excluded as inadmissible hearsay.

*2. November 17, 2010 Blog Posting*

For the same reasons set forth above regarding the September 16, 2010 blog posting, the November 17, 2010 blog posting would also be inadmissible on the grounds that Kennerty failed to properly authenticate this evidence pursuant to F.R.E. 901.

*3. Reuters Article*

Kennerty also presented a copy of a July 2011 article from Reuters magazine entitled, "Mortgage Mess Redux: Robo-Signers Return," written by Scot J. Paltrow. The article, which does not specifically mention Kennerty, was offered for the purpose of showing that individuals holding similar positions or performing similar functions as Kennerty for Wells Fargo had received death threats following the publication of their videotaped depositions on the Internet. The specific language from the article cited by Kennerty states that "R. Christopher Rodems, a lawyer for [Bryan] Bly, ... said Bly had received death threats after a videotaped deposition Bly gave in November 2010 was posted briefly on YouTube, in which he testified about signing massive numbers of mortgage assignments." As a periodical, the article from Reuters magazine would be self-authenticating pursuant to F.R.E. 902(6), which provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to printed materials purporting to be newspapers or periodicals. However, the specific language referenced in the article appears to be inadmissible hearsay, since it is a statement being offered to prove the truth of the matter asserted, i.e., that an individual in

a similar position received death threats as a result of the publication of his deposition, and no hearsay exceptions appear to apply. See F.R.E. 801(c) (providing that hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted); F.R.E. 802 (providing that hearsay is not admissible except as provided by these rules and by other rules prescribed by the Supreme Court). Therefore, the Court will not consider this evidence for purposes of determining whether good cause exists to issue a protective order.

   *4. Rolling Stone Article*

Finally, Kennerty presents an article published in the November 25, 2010 issue of Rolling Stone magazine entitled, "Invasion of the Home Snatchers: Matt Taibbi on how foreclosure courts are helping big banks screw over homeowners," written by Matt Taibbi. Unlike the Reuters article, this article contains a specific reference to Kennerty. In discussing the foreclosure case of Shawnetta Cooper in Jacksonville, Florida, the author writes:

> It's not hard to find the fraud in [Cooper's] case. For starters, the assignment of mortgage is autographed by a notorious robo-signer—John Kennerty, who gave a deposition this summer admitting that he signed as many as 150 documents a day for Wells Fargo. In Cooper's case, the document with Kennerty's signature on it places the date on which Wells Fargo obtained the mortgage as May 5th, 2010. The trouble is, the bank bought the loan from Wachovia—a bank that went out of business in 2008. All of which is interesting, because in her file, it states that Wells Fargo sued Cooper for foreclosure on February 22nd, 2010. In other words, the bank foreclosed on Cooper three months before it obtained her mortgage from a nonexistent company.

Like the Reuters article, the Rolling Stone article is self-authenticating pursuant to F.R.E. 902(6) since it is a newspaper or periodical. Debtor did not make a specific argument regarding the exclusion of this evidence on hearsay grounds, and the Court finds no basis

for its exclusion on such grounds. Accordingly, the Rolling Stone article is admitted as evidence in this case.

## ANALYSIS

Considering the admissible evidence in this case, the Court finds that good cause has been demonstrated for the issuance of a temporary protective order in this case. Kennerty is not required to show a concrete threat to an important interest to obtain a protective order under Fed. R. Civ. P. 26(c); rather, he is only required to make some showing of good cause in order to restrict the use of his depositions. See E.E.O.C. v. National Children's Center, Inc., 98 F.3d 1406, 1411 (D.C. Cir. 1996) (citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 31 (1984)). The Rolling Stone article provides support for Kennerty's argument that his reputation was previously affected by the publication of his deposition on the Internet, whether through the reference to Kennerty as a "notorious robo-signer" or through his loss of privacy by the publication of his name in a national publication as an employee of Wells Fargo who engaged in a business practice that has recently gained significant negative attention in the media. Debtor's counsel argues that the term "robo-signer" is a term of art and does not have negative connotations. Considering the recent attention to "robo-signers" in the national media and the fact that the adjective, "notorious," is defined as meaning "widely and unfavorably known," this Court disagrees. See e.g, The American Heritage College Dictionary 934 (3rd ed. 1993); http://www.merriam-webster.com/dictionary/notorious (last visited 9/12/2011). Furthermore, Kennerty is also cast in an unfavorable light by virtue of the reference to him as an employee of a big bank, Wells Fargo, in an article titled, "Invasion of the Home Snatchers: Matt Taibbi on how foreclosure courts are

helping big banks screw over homeowners." This particularized and specific demonstration of fact appears to be sufficient to show good cause for prohibiting the pre-trial disclosure of the deposition in this case. Although Debtor's counsel has advised the Court that she has no intention of publishing Kennerty's deposition on the Internet, she has expressed a desire to share the contents of the deposition with other consumer attorneys who are engaged in litigation against Wells Fargo. Despite her stated intentions, absent a protective order, there is nothing that would prevent others who received the deposition from publicly disseminating it on the Internet or in other national publications and potentially exposing Kennerty to similar future negative commentary about him as that expressed in the Rolling Stone article. Moreover, the imposition of a protective order in this case would also not impair any First Amendment rights, since "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." Seattle Times, 467 U.S. at 30. A pretrial deposition is not a public component of a civil trial, and the deposition transcript would not constitute a judicial document until it is filed with the court.[4]

Finally, Debtor's counsel argues that interests of judicial economy support the sharing of the deposition transcript with other consumer attorneys engaged in litigation with Wells Fargo. However, the Court is not convinced that the interests of the Debtor in this litigation would be advanced in any way through the pre-trial dissemination of the deposition transcript. In the event the deposition testimony is admitted into the record by the trial court at a later time, that record may be available to similarly situated parties and their counsel. Accordingly, the Court finds that the imposition of a protective order

---

[4] The Supreme Court has stated that "an order prohibiting dissemination of discovered information before trial is not the kind of class prior restraint that requires exacting First Amendment scrutiny," since it is not a restriction on a traditionally public source of information. Seattle Times, 467 U.S. at 33.

preventing such dissemination until further order of this Court or until the admission of the deposition transcript and related exhibits by the trial court is appropriate at this time. Under the circumstances of this case, the Court finds that Kennerty has shown good cause for the issuance of a protective order.

### II.    Request for Limitations on Scope of Deposition Testimony

Kennerty further asks the Court to issue an order limiting the scope of the deposition testimony to issues relevant to the mortgage assignment and claim in this case.[5] The Federal Rules permit liberal pretrial discovery, but such discovery is limited to non-privileged matters that are relevant to *any party's claim or defense.* See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") At this stage in the litigation and in light of its issuance of a protective order, the Court is not inclined to place limitations on the scope of the deposition testimony (beyond those already imposed by the Federal Rules of Civil Procedure) in advance of the deposition. To the extent that Debtor's counsel attempts to question Kennerty about matters of questionable relevance during the deposition or Kennerty has other objections, he may seek a protective order at that time.

Based on the foregoing, it is hereby

ORDERED that Kennerty's Motion is granted with respect to his request for a protective order prohibiting the public disclosure of Kennerty's deposition transcript and limiting the use of Kennerty's deposition transcript at this time to this litigation only. The

---

[5]    Counsel for Kennerty stated that his client was asking the Court to confine the inquiry to the "four corners" of the mortgage assignment.

parties are hereby prohibited from publishing, disseminating, or using the transcript of Kennerty's deposition or any excerpts or related exhibits in any way except where necessary to prepare for and try the case until further order of this Court or until the deposition and related exhibits are determined to be admissible by the United States Bankruptcy Court for the Southern District of New York rules as part of the trial of the Debtor's Objection to Claim;[6]

IT IS FURTHER ORDERED that this Order is applicable to all parties to this litigation and their agents, including counsel, court reporters, transcriptionists, and other agents, and a copy of this Order should be provided to such individuals by the parties; and

IT IS FURTHER ORDERED that Kennerty's Motion is denied without prejudice as to his request for an order limiting the scope of the deposition testimony.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
September 16, 2011

---

[6] The protective order would not apply to information gained through other independent means, even if identical to information obtained through the deposition and covered by the protective order.